

One Constitution Center
Boston, Massachusetts
02129

Telephone:
617.886.0500

Facsimile:
617.886.0100

www.parkerscheer.com

February 5, 2020

Middlesex Superior Court
Civil Clerk's Office
200 Trade Center, 2nd Floor
Woburn, MA  01801

RE:     <u>Andrea Harding v. Pathway Vet Alliance, LLC</u>

Dear Sir or Madam:

Enclosed herewith please find a Complaint for filing along with the Civil Action Cover Sheet and check in the amount of $275 to cover the filing fee.

Thank you.

Very truly yours,

Barry S. Scheer

BSS/alb
Enclosure
cc:  Michael Mankes, Esq.

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Andrea Harding

ADDRESS:

**COUNTY** Middlesex

**DEFENDANT(S):** Pathway Vet Alliance, LLC f/k/a Pathway Partners Vet

Management Company, LLC

**ATTORNEY:** Barry S. Scheer, Esq., Lisa M. Scalisi, Esq.

ADDRESS: Parker Scheer, LLP

One Constitution Center

Boston, Massachusetts 02129

BBO: 445100, 678942

ADDRESS: Michael Mankes, Esq. , Littler Mendelson, PC

One International Place, Suite 2700 Boston, MA 02110

BBO# 662127

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES ☐ NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ........................................................................ $ _____
    2. Total doctor expenses .......................................................................... $ _____
    3. Total chiropractic expenses ................................................................. $ _____
    4. Total physical therapy expenses .......................................................... $ _____
    5. Total other expenses (describe below) ................................................ $ _____
                             **Subtotal (A):** $ _____

B. Documented lost wages and compensation to date ............................................. $ _____
C. Documented property damages to dated .............................................................. $ _____
D. Reasonably anticipated future medical and hospital expenses .............................. $ _____
E. Reasonably anticipated lost wages ....................................................................... $ _____
F. Other documented items of damages (describe below) ......................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                          **TOTAL (A-F):**$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):
  Original exclusive jurisdiction.

                                          **TOTAL:** $ _____

**Signature of Attorney/Pro Se Plaintiff: X**           **Date:**

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:  X** _____    **Date:** 2/4/20

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

| | |
|---|---|
| AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c.231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | |
|---|---|
| PA1 Contract Action involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical / Wrongful Death | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death, G.L. c.229 §2A | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

**RP Real Property**

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10 §28 | (X) |

**AB Abuse/Harassment Prevention**

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c.249 §4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G. L. c. 93 §9 | (A) |
| E07 Mass Antitrust Act, G. L. c. 93 §8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149 §§29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c.12 §11H | (A) |
| E24 Appeal from District Court Commitment, G. L. c.123 §9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c265 §56 | (X) |
| E95 Forfeiture, G.L. c.94C §47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231 §60B | (F) |
| Z02 Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A §12 | (X) |
| E14 SDP Petition, G.L. c. 123A §9(b) | (X) |

**RC Restricted Civil Actions**

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c.6 §178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112 §12S | (X) |

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☐ YES   ☒ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMONWEALTH OF MASSCHUSTTS

MIDDLESEX, SS.

SUPERIOR COURT
CIVIL NO. _____

---

ANDREA HARDING,                          )
                          Plaintiff,      )
                                          )
v.                                        )
                                          )
PATHWAY VET ALLIANCE, LLC, f/k/a          )
PATHWAY PARTNERS VET MANAGEMENT           )
COMPANY, LLC,                             )
                          Defendant.      )

---

## COMPLAINT AND JURY DEMAND

### PARTIES

1.      Plaintiff, Andrea Harding, ("Ms. Harding") is an individual residing in Wellesley,

Norfolk County, Massachusetts. As of the date of this Verified Complaint, Ms. Harding is 66

years old. Ms. Harding has, at all times relevant hereto, been a Massachusetts based employee of

the defendant.

**2.**      Defendant, Pathway Vet Alliance, LLC, f/k/a Pathway Partners Vet Management

Company, LLC ("Pathway"), is a Delaware limited liability company with a principal office

located at 800 W. Cesar Chavez St., Suite B-100, Austin, Texas 78701. Pathway is registered as

a foreign limited liability company doing business in Massachusetts. Pathway regularly and

systematically conducts business in Massachusetts operating several veterinary clinics within the

Commonwealth of Massachusetts including four clinics in Middlesex County.

### JURISDICTION

3.      Ms. Harding's claim is brought pursuant to M.G. L. c. 151B. She has met all

jurisdictional prerequisites, having timely filed her claim with the Massachusetts Commission

Against Discrimination and cross filed same with the Federal Equal Employment Opportunity

Commission.  Jurisdiction is also predicated upon M.G.L. c. 223A §3 (a).

## GENERAL ALLEGATIONS

### A. Ms. Harding's Employment at Pathway

4.      Ms. Harding was hired in 2003 as a hospital administrator for New England

Veterinary Group, serving as a Practice Manager for the Group's Natick Animal Clinic and

Weston Veterinary Clinic.

5.      In 2016 – after Ms. Harding had worked with the company for thirteen years – the

New England Veterinary Group was acquired by Pathway.

6.      Initially following the acquisition, Ms. Harding continued to serve as a Practice

Manager, but was soon promoted to Regional Coach for Pathway's New England region, while

still handling many of her duties as Practice Manager.

7.      As of July 10, 2017, Pathway again promoted Ms. Harding to a position as

"Regional Operations Manager – North East Region," with an annual salary of $100,000.

8.      Ms. Harding was one of approximately nine Regional Operations Managers

("ROMs") at Pathway in 2017-2018.

9.      Ms. Harding reported to Greg Damico, Pathway's Vice President of Operations.

Upon information and belief, Greg Damico is in his early 40s.

10.      As ROM, Ms. Harding oversaw her regional management team, which consisted

of Regional Medical Operations Coach Paul Pelletier (mid-40s) and Area Business Manager

("ABM") Laurie LaCharite (mid-30s).

11.     From July 2017 until August 2018, Ms. Harding performed her job to the apparent satisfaction of Greg Damico and of her other colleagues.

12.     Indeed, in December 2017, Mr. Damico had cancelled Ms. Harding's face-to-face evaluation due to his meeting schedule that day, instead conducting the evaluation during a five-to-ten-minute phone call with Ms. Harding while he was at the airport.  The brief evaluation was favorable, and, at the conclusion of the call, Ms. Harding received both a $10,000 bonus, and a $10,000 merit-based raise, bringing her new annual salary to $110,000.

**B.  Pathway Inexplicably Demotes Ms. Harding in Favor of New, Younger Candidate**

13.     In late August 2018, Mr. Damico suddenly advised Ms. Harding that he and Dr. Bill Griffin (Pathway's Chief Operations Officer, believed to be age 50) felt that the region needed a "new perspective," that Mr. Damico would be interviewing a candidate to replace her in her ROM position, and that he wanted Ms. Harding to participate in the interview of the candidate expected to take her job.

14.     At that time, all of Ms. Harding's performance reviews had been very good or excellent, and at no time had Pathway provided any Performance Improvement Plans or written corrective actions for Ms. Harding.

15.     Initially, Mr. Damico informed Ms. Harding that she would remain in the role as ROM until the end of 2018, but that there were no other open positions at Pathway for Ms. Harding.  He indicated that Pathway might create an "Emeritus part-time role" for her – but for only a year's duration – but no such position existed, or ever came into being.  Ms. Harding interpreted Mr. Damico's use of the term "Emeritus" to be a reference to her age, and she was concerned with the explicit limitation of any such role to a period of just one year.

16.     At this time, upon information and belief, all of Pathway's ROMs (excluding Ms. Harding) were in their 30s or 40s.

17.     During this conversation, Mr. Damico also stated that Ms. Harding's management team "are the most expensive in relation to the revenue ceiling of this region."

18.     When pressed for a reason for Pathway's decision to remove Ms. Harding from her ROM position, Mr. Damico told Ms. Harding (first raised in a meeting in February 2018), that he had some concerns about Ms. Harding's "communication," specifically relative to asking too many questions specific to her own region during a December 2017 training session attended by Pathway employees from several regions.  Other than that single event, Mr. Damico was unable to identify any specific examples of conduct justifying Ms. Harding's removal from her position. Despite asking Mr. Damico why it took him so long to address that issue, she was given no satisfactory reason.

19.     When Ms. Harding later discussed this "communication" concern with a fellow ROM and several managers who had attended that meeting, all of those persons disputed the accuracy of Mr. Damico's characterization of the event, and all denied it created any kind of "concern".

20.     Three weeks after learning that she would be removed from her ROM position, during a telephone meeting with Mr. Damico, Ms. Harding asked for clarification on the decision that a "new perspective" was needed for her ROM role, pointing out that the region she oversaw as the ROM was either the top performer or middle-of-the-road performer (depending on the metrics used) among all of Pathway's regions between January and June 2018.  Ms. Harding also related to Mr. Damico her conversations with the fellow ROMs concerning the "communication" issue Mr. Damico had raised.

21.     Mr. Damico responded by recognizing Ms. Harding's skills, her professionalism, and her region's numbers, but stated that he felt "something was off" over the last two months, and "it was coming out in [Ms. Harding's] communications." He further responded to the effect of, "I feel badly that I have not been specific or clear in my coaching efforts, nor timely," thereby acknowledging that he had never raised any issue concerning Ms. Harding's "communications" prior to his announcement of Pathway's need for a "new perspective." Mr. Damico went on to again encourage Ms. Harding to participate in the interviewing of the candidate expected to replace her as ROM.

22.     With Mr. Damico's permission, Ms. Harding shared this unexpected news with the members of her team, Mr. Pelletier and Ms. LaCharite. Both were baffled and upset with the news that Ms. Harding was being removed as ROM, and felt that their team needed Ms. Harding.

23.     At Mr. Damico's urging, Ms. Harding agreed to participate in the interview of the new candidate, and attended a dinner meeting with Mr. Damico, two other members of the regional leadership team, and the candidate, Torie Madore. Upon information and belief, Ms. Madore is in her mid-40s.

24.     During the dinner, Mr. Damico discussed with Ms. Madore her expected visit to Austin, TX (Pathway's corporate headquarters) to meet with the different departments she will work with, and indicated that she could participate in his birthday celebration. This discussion made Ms. Harding feel uncomfortable and humiliated.

25.     After leaving the restaurant, Mr. Damico asked Ms. Harding for her opinion of Ms. Madore. Ms. Harding explained that while she found Ms. Madore pleasant, she felt that Ms. Madore was overqualified for the ROM position, and was better suited for a position as a Director of Operations for the East Coast.

26.    Mr. Damico agreed with Ms. Harding's assessment of Ms. Madore's qualifications, but indicated that, by putting her in the ROM position first, he could "test" her to make sure she was as good as she seemed.

27.    On September 24, 2018, Ms. Harding arranged a half-hour conference call with Kelly Walker (believed to be in her early-40s), Pathway's Director of People Operations, to gain some clarity regarding Pathway's decision to remove her as ROM.  During that call, Ms. Harding related her conversation with Mr. Damico from late August 2018, and the events that had transpired since then (as detailed above), as well as the uncertainty of any new position Mr. Damico supposedly might create for her.  Ms. Walker responded, very sympathetically and supportively, that she did not know what to say, implying that the events Ms. Harding was experiencing were not acceptable.  Ms. Walker also indicated that she wished Ms. Harding had come to her sooner, but understood why she had not.

28.    Ms. Walker then arranged for a call between Ms. Harding and Mr. Damico to discuss these issues.  During that call, Mr. Damico and Ms. Harding discussed the situation, and agreed to move forward and try to rebuild trust.

29.    After learning that Pathway had hired Ms. Madore for Ms. Harding's ROM position beginning in early October 2018, Ms. Harding agreed to train Ms. Madore and begin handing off some of her duties to her.

30.    Shortly thereafter, in an email to the team, Mr. Damico explained that Ms. Madore would be taking over the ROM position, while Ms. Harding "is working to transition her ROM duties to [Ms. Madore] over the next two months (including this month) at which point, [Ms. Harding] will focus on a different role that we are working together to more clearly define." Again, no such role for Ms. Harding had been, or ever was, established.

31.     During the period that Ms. Harding served as ROM, only one Area Business Manager ("ABM") (Ms. LaCharite) was part of Ms. Harding's management team. Ms. LaCharite resigned soon after Ms. Madore replaced Ms. Harding as ROM.

32.     With no "Emeritus" position ever coming to fruition, in mid-December 2018, Mr. Damico assigned Ms. Harding to the ABM position that opened with Ms. LaCharite's resignation – a hierarchal demotion for Ms. Harding. Because of Pathway's admittedly poor handling of their removal of Ms. Harding from the ROM position, they permitted Ms. Harding to retain her ROM salary of $110,000. However, her job duties, authority, and company prestige were considerably diminished in the new ABM role.

### C. Pathway Duplicates Ms. Harding's New ABM Position, Then Terminates Her

33.     Ms. Harding again performed her ABM role to the apparent satisfaction of Ms. Madore and Mr. Damico.

34.     In January or February of 2019, Ms. Madore asked Ms. Harding's opinion concerning the performance and capabilities of a Practice Manager within their region, Bethany Greenwood (mid-30s). Ms. Harding honestly responded that she believed Ms. Greenwood had potential, but that her communication skills needed maturing, and she had difficulty managing the two hospitals assigned to her, which were underperforming.

35.     In March 2019, Ms. Madore sought and received approval from Pathway to add a second ABM position to her management team. Ms. Madore then promoted Ms. Greenwood to that second ABM position, such that Ms. Harding and Ms. Greenwood were both ABMs for their management team. It was particularly surprising that Pathway added a fourth member to the team, given Mr. Damico's earlier comment, when advising Ms. Harding that she would be removed from her ROM position, that their management team was the "most expensive."

36.     Ms. Harding thereafter trained Ms. Greenwood for her new ABM position. Ms. Harding received feedback from other managers indicating that they did not feel Ms. Greenwood was ready for an oversight role, and Ms. Harding shared this information with Ms. Madore.

37.     In April 2019, Ms. Harding learned that Mr. Griffin (Pathway's Chief Operations Officer) had been terminated from Pathway.

38.     In June 2019, Ms. Harding learned that Mr. Damico had been terminated from Pathway.

39.     On June 26, 2019, Ms. Harding, Ms. Madore, Mr. Pelletier, and Ms. Greenwood flew as a team to Austin, TX for Ms. Madore's financial overview presentation at Pathway's headquarters. The team worked all day that day to collect data and prepare the presentation.

40.     The next day, Ms. Madore delivered the presentation at the meeting. At the meeting, it was also revealed that Ms. Madore's region – like all other regions – was not making its budget, but unlike other regions, the region was 0% year-over-year growth. While Ms. Harding was ROM, the region was 5% year-over-year growth.

41.     After the conclusion of the meeting, as Ms. Harding was preparing to leave for the airport, Dr. Robert Murtaugh, Pathway's Chief Medical Officer, pulled Ms. Harding aside and summarily terminated her, stating that Ms. Harding's position as ABM has been eliminated.

42.     Surprised by this news, Ms. Harding pointed out that there were two ABM positions within her region, and questioned why her position – and not the ABM position of Ms. Greenwood, who had less experience, was less qualified, and had spent substantially less time in the ABM role and within leadership – was selected for elimination. Dr. Murtaugh responded, "There is nothing in your performance, you are hard-working. This is not a performance-based

issue, it is a reorganization." He did not address Ms. Harding's question concerning the elimination of her position versus Ms. Greenwood's position.

43.    Ms. Harding asked whether there were any other positions available for her at Pathway, Dr. Murtaugh repeatedly stated that Ms. Harding's position had been eliminated, and generally suggested that she could apply for any open positions through Pathway's website, if she chose to do so.

44.    Pathway did not offer Ms. Harding the opportunity to interview for the remaining ABM position in the region, nor did Pathway make any requests that Ms. Harding make any concessions in order to become the sole ABM in the region.

45.    Ms. Greenwood's experience and qualifications for the ABM position pale in comparison to Ms. Harding's. For example, Ms. Harding holds a Bachelor of Arts degree (cum laude), a graduate certificate in Management in Special Studies Program from Harvard University (32 graduate credits), and a Masters of Science in Administrative Services from Boston College. Ms. Greenwood holds only a high school diploma. Further, Ms. Harding has over thirty years of experience in business management, including her sixteen years as a business administrator in veterinary medicine, having administered business budgets as large as $27,000,000. Ms. Greenwood's management experience only began in 2006, and was limited to management duties in small veterinary hospitals until Pathway created a new ABM position for her alongside Ms. Harding in March 2019.

46.    Additionally, at the time, there were at least two other positions open at Pathway for which Ms. Harding was qualified: a ROM position for Pathway's Southeast Region, and a ROM position for Pathway's Central Region. Pathway did not offer Ms. Harding either of these positions, or offer for her to interview for either of these positions.

47.     Ms. Harding is not aware of any employee in Pathway's operations division who is over 63 years of age.

48.     Upon information and belief, Ms. Greenwood's salary was substantially less than Ms. Harding's at the time of Ms. Harding's termination.

## COUNT I

### Violation of Massachusetts Fair Employment Practices Act
### M.G.L. c. 151B, § 4, *et seq.*

49.     Ms. Harding repeats and realleges the allegations set forth in paragraphs 1 through 47. above as if fully set forth herein.

50.     At least by:

(a)     Suddenly and summarily removing Ms. Harding from her position as ROM, without any corroborating, bona fide reason, solely to replace her with Ms. Madore, who is 22 years younger than Ms. Harding and was acknowledged to have been overqualified for the position;

(b)     Stating that Pathway needed a "new perspective," apparently through this younger candidate, and suggesting that Ms. Harding could fill a non-existent "Emeritus part-time role" instead of the ROM position from which she was being removed;

(c)     Indicating that Ms. Harding's team was "expensive," but not offering Ms. Harding the opportunity to continue in her role as ROM at a lesser salary, or taking any action to remove any of the other "expensive" – but younger – team members from their positions, and in fact later *adding* another person to the team;

(d)     Suggesting that any new role Ms. Harding filled at Pathway would be limited to one year, and then summarily terminating Ms. Harding from that new role within that one year, as intended;

(e)     Demoting Ms. Harding to a lesser position, and within three months, duplicating that position, promoting an unqualified candidate and requiring Ms. Harding to train her, in an apparent attempt to make Ms. Harding's new position obsolete;

(f)     Summarily terminating Ms. Harding from the ABM position, while keeping Ms. Greenwood in the same ABM position, who was substantially less qualified and less experienced, but who is 29 years younger than Ms. Harding, and who, at the time, was earning a substantially lower salary;

(g)     Failing to articulate any reason at all why the younger Ms. Greenwood was selected to remain in the ABM role while the older Ms. Harding's very same role was "eliminated";

(h)     Failing to give Ms. Harding the opportunity to interview for the remaining ABM position, or asking her to make any concessions to continue to hold the remaining ABM position, but rather defaulting that position to the younger and less experienced Ms. Greenwood;

(i)     Failing to offer Ms. Harding any other position, or the chance to interview and compete for any other position, for which she was qualified at Pathway; and

(j)     Treating Ms. Harding vastly differently than similarly situated Pathway employees who are at least five years younger than Ms. Harding;

Pathway has discriminated against Ms. Harding on the basis of her age, in violation the

Massachusetts Fair Employment Practices Act M.G.L. c. 151B.

51.    Any other stated ground for Pathway's above actions is mere pretext.

52.    As a direct and proximate result of Pathway's discriminatory conduct on the basis

of Ms. Harding's age, Ms. Harding has suffered loss of back-pay, loss of front-pay, lost of

benefits, emotional distress, and other damages.

**COUNT II**

**VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT
29  U.S.C. § 626, *et seq.***

53.    Ms. Harding repeats and realleges the allegations set forth in paragraphs 1

through 51 above as if fully set forth herein.

54.    At least by:

(a)    Suddenly and summarily removing Ms. Harding from her position as ROM,

without any corroborating, bona fide reason, solely to replace her with Ms.

Madore, who is 22 years younger than Ms. Harding and was acknowledged

to have been overqualified for the position;

(b)    Stating that Pathway needed a "new perspective," apparently through this

younger candidate, and suggesting that Ms. Harding could fill a non-existent

"Emeritus part-time role" instead of the ROM position from which she was

being removed;

(c)    Indicating that Ms. Harding's team was "expensive," but not offering Ms.

Harding the opportunity to continue in her role as ROM at a lesser salary, or

taking any action to remove any of the other "expensive" – but younger –

12

team members from their positions, and in fact later *adding* another person
to the team;

(d)    Suggesting that any new role Ms. Harding filled at Pathway would be
limited to one year, and then summarily terminating Ms. Harding from that
new role within that one year, as intended;

(e)    Demoting Ms. Harding to a lesser position, and within three months,
duplicating that position, promoting an unqualified candidate and requiring
Ms. Harding to train her, in an apparent attempt to make Ms. Harding's new
position obsolete;

(f)    Summarily terminating Ms. Harding from the ABM position, while keeping
Ms. Greenwood in the same ABM position, who was substantially less
qualified and less experienced, but who is 29 years younger than Ms.
Harding and who, at the time, was earning a substantially lower salary;

(g)    Failing to articulate any reason at all why the younger Ms. Greenwood was
selected to remain in the ABM role while the older Ms. Harding's very same
role was "eliminated";

(h)    Failing to give Ms. Harding the opportunity to interview for the remaining
ABM position, or asking her to make any concessions to continue to hold
the remaining ABM position, but rather defaulting that position to the
younger and less experienced Ms. Greenwood;

(i)    Failing to offer Ms. Harding any other position, or the chance to interview
and compete for any other position, for which she was qualified at Pathway;
and

(j)     Treating Ms. Harding vastly differently than similarly situated Pathway

employees who are at least five years younger than Ms. Harding;

Pathway has discriminated against Ms. Harding on the basis of her age, in violation the Age

Discrimination in Employment Act 29 U.S.C. § 626.

55.     Any other stated ground for Pathway's above actions is mere pretext.

56.     As a direct and proximate result of Pathway's discriminatory conduct on the basis

of Ms. Harding's age, Ms. Harding has suffered loss of back-pay, loss of front-pay, lost of

benefits, emotional distress, and other damages.

WHEREFORE, Ms. Harding prays for all relief available at law, including, but not

limited to, damages for back-pay and front-pay, emotional distress damages, double and treble

damages for willfulness and other make-whole relief, as well as attorneys' fees, costs, and

applicable pre-judgment interest.

14

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

Respectfully submitted,

Plaintiff, Andrea Harding,
By her attorneys,

Barry S. Scheer, BBO #445100
Lisa M. Scalisi, BBO #678942
Parker | Scheer LLP
One Constitution Center
Boston, MA 02129
Tel: (617) 886-0500
Fax: (617) 886-0100
bss@parkerscheer.com
lms@parkerscheer.com

Dated: *February 4* , 2020